IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

AUGUST 1998 SESSION

FILED

December 29, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 01C01-9712-CR-00566 |
| | ) | |
| | ) | Putnam County |
| v. | ) | |
| | ) | Honorable John Turnbull, Judge |
| | ) | |
| CHARLES B. LUKE, | ) | (Certified Question of Law) |
| | ) | |
| Appellant. | ) | |

For the Appellant:

Donald G. Dickerson
310D East Broad Street
Cookeville, TN 38501

For the Appellee:

John Knox Walkup
Attorney General of Tennessee
          and
Timothy Behan
Assistant Attorney General of Tennessee
425 Fifth Avenue North
Nashville, TN 37243-0493

William Edward Gibson
District Attorney General
          and
Shawn Fry
Assistant District Attorney General
145 South Jefferson Avenue
Cookeville, TN 38501

OPINION FILED:_____

CONVICTION AFFIRMED; REMANDED FOR SENTENCE MODIFICATION

Joseph M. Tipton
Judge

## O P I N I O N

The defendant, Charles B. Luke, was convicted pursuant to his plea of nolo contendere in the Putnam County Criminal Court of driving under the influence of an intoxicant (D.U.I.), a Class A misdemeanor. The trial court sentenced the defendant to five months, twenty-nine days confinement in the county jail with all but forty-eight hours to be served on probation and a fine of three hundred sixty dollars. The defendant appeals as of right upon the following certified question of law that is dispositive of this case, see T.R.A.P. 3(b); Tenn. R. Crim. P. 37 (b)(2)(i):

> Does a police dispatch based on a phoned-in tip providing a description of a vehicle, license number and statement that [the] driver "has no business driving" justify the stop of a motorist's vehicle who has exhibited no bad driving, when the arresting officer did not speak to or know the name of the informant and has no other information about the defendant other than that relayed by the dispatcher?

We affirm the trial court's finding that the stop was justified. However, we note that the sentence imposed by the trial court was improper, and we remand the case for imposition of a sentence of eleven months, twenty-nine days instead of five months, twenty-nine days.

The defendant filed a Motion to Suppress the evidence obtained from the investigatory stop that led to his arrest. At the suppression hearing, Angela Chesebro, a dispatcher for the Cookeville Police Department, testified that on April 12, 1997, she received a telephone call from the Holiday Inn. The tape of that telephone call, which was exhibit one at the hearing, states as follows:

> Chesebro:  Cookeville Police Department, Operator Chesebro, may I help you?
>
> Derwin:  Hi, this is the Holiday Inn. My security guard wanted me to call you and tell you that there is a white Chevy pickup just exited our parking lot and headed north on Jefferson. The guy's got no business driving and I have a plate number.

2

Chesebro: What is the plate?

Derwin: It is D for dealer.

Chesebro: Uh-huh.

Derwin: 48397.

Chesebro: White Chevy pickup?

Derwin: White Chevy pickup. He's headed north on Jefferson.

Chesebro: Could I get your name, ma'am?

Derwin: My name is Dorinda, D-O-R-I-N-D-A. Last name Derwin, D-E-R-W-I-N.

Chesebro: Okay, ma'am, we'll notify our officers, okay?

Derwin: Okay, thank you.

Chesebro: Alright, bye bye.

Dispatcher Chesebro testified that she wrote this information on a complaint card and stamped the card with the time, which was 3:16 a.m. She stated that she then handed the card to Dispatcher Lana Smith, who was in charge of the radio.

Lana Smith, a dispatcher for the Cookeville Police Department, testified that on April 12, 1997, she radioed a dispatch concerning a white Chevrolet pickup truck based upon information she received from Dispatcher Chesebro. A tape of this dispatch, which was exhibit three at the hearing, stated as follows:

Smith: Cookeville City east side units, just leaving the Holiday Inn going northbound on Jefferson, we have a 10-49 driver be in a white Chevy pickup. License number David 48397, 48397.

Dispatcher Smith testified that a 10-49 driver is a driver suspected to be under the influence.

Sergeant David Dukes, an officer with the Cookeville Police Department, testified that on April 12, 1997, he received a dispatch concerning a white Chevrolet pickup truck. He stated that within three or four minutes, he spotted the truck at a gas

3

station two hundred yards north of the Holiday Inn. Sergeant Dukes stated that he radioed Officer Matt and Officer Demming about the truck, then he pulled into a nearby business to watch for the truck to leave the gas station. Sergeant Dukes testified that a few minutes later, he saw the truck leave the gas station. He stated that a short time later, he saw Officer Demming responding to his radio call.

Officer Yvette Demming of the Cookeville Police Department testified that on April 12, 1997, she heard the dispatch from Dispatcher Smith concerning a white pickup truck. She stated that after communicating with Sergeant Dukes, she met him as he was following a white Chevrolet pickup truck with dealer plates and then got behind the truck as Sergeant Dukes pulled away. She said that once she got behind the truck, she activated the video camera in her car. She stated that she followed the truck for one mile before activating her blue lights. Officer Demming testified that the truck was in the right lane of three lanes of traffic. She said that the driver of the truck turned on the left blinker and moved into the center lane. She stated that the truck remained in this lane, although the driver did not turn off the blinker. Officer Demming further testified that as she followed the truck, it accelerated as it approached a red light. She stated that when the truck stopped at the light, its bumper bounced up and down. She stated that when she stopped behind the truck at the traffic light, she confirmed that the license plate number matched the one given in the dispatch. Officer Demming testified that she then turned on her blue lights and stopped the truck in a parking lot. Officer Demming stated that she would not have stopped the defendant based solely on his driving without the information from the dispatch. She testified that at the time of the stop, she had no information about the source of the dispatch.

Gary Murphy testified that he was working as a security guard at the Holiday Inn at the time of the offense. The trial court limited Murphy's testimony to the communications he had with Dorinda Derwin and found this testimony relevant not for

4

its truth but to establish the information known to Derwin when she telephoned the police. Murphy testified that he asked Derwin to call the Cookeville City Police Department to notify them that a man was leaving the Holiday Inn parking lot and that Murphy did not think the man should be driving. He stated that he told Derwin that the man was driving a white Chevrolet pickup truck with a red dealer's license tag with the number D-48397. Murphy testified that he gave this information to Derwin as he stood in the doorway looking out on the parking lot and watched the defendant attempting to leave the parking lot in his truck. He stated that he heard Derwin make the telephone call to the police.

At the close of the hearing, the trial court made the following factual findings as summarized below:

> (1) that Officer Demming's stop was not based upon any bad driving on the part of the defendant,
>
> (2) that Officer Demming's stop was based upon a police dispatch to be on the lookout for a possible D.U.I. involving a white Chevrolet pickup truck with license plate number D-48397 which left the Holiday Inn at 3:16 a.m,
>
> (3) that within three minutes of the dispatch, Officer Demming spotted a vehicle matching that description and with that license plate number and after following the pickup for a considerable length of time, she stopped the defendant,
>
> (4) that the information Officer Demming received in the dispatch was based upon a telephone call from the clerk at the Holiday Inn, who described the make, color and license plate number of the vehicle and stated, "This guy's got no business driving,"
>
> (5) that based upon this information from the clerk, the dispatcher, Angela Chesebro, issued a complaint card indicating a possible D.U.I.,
>
> (6) that under the given time and circumstances, it was reasonable to conclude that a report that someone should not be driving was, in fact, a report of D.U.I.,
>
> (7) that a second dispatcher, Lana Smith, then placed a dispatch for officers to be on the lookout for a possible D.U.I., and the dispatch contained the information upon which Officer Demming based her stop of the defendant,

5

(8) that when Officer Demming confirmed that the description and license plate number matched the defendant's vehicle, this adequately validated the information given in the dispatch and was sufficient to lead her to believe the information's validity even though she had not received it personally, and

(9) that the information given to the dispatcher and received and confirmed by Officer Demming provided reasonable and articulable facts which generated reasonable suspicion that a crime was being committed by the driver of a white Chevrolet pickup truck with the license plate number D-48397.

Accordingly, the trial court denied the Motion to Suppress.

The defendant contends that the trial court erred in denying his Motion to Suppress because the information provided in the telephone tip from Derwin failed to justify the stop. He argues that the tip did not state that he was engaged in any illegal activity, the informant gave no factual basis for her tip and the arresting officer's personal observations did not verify any illegal conduct on the part of the defendant. Thus, the defendant argues that Officer Demming's stop was not supported by reasonable suspicion.

In reviewing the trial court's denial of a Motion to Suppress, we accept the trial court's findings of fact unless the evidence preponderates otherwise. See State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997). However, the law as applied to those facts is subject to de novo review. Id. The defendant bears the burden of demonstrating that the evidence preponderates against the trial court's findings. State v. Odom, 928 S.W.2d 18, 22-23 (Tenn. 1996).

An automobile stop constitutes a seizure within the meaning of both the Fourth Amendment of the United States Constitution and Article I, Section 7 of the Tennessee Constitution. See Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450, 110 S. Ct. 2481, 2485 (1990); State v. Pully, 863 S.W.2d 29, 30 (Tenn. 1993); State v. Binion, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994). The police may stop a vehicle if they have reasonable suspicion based upon specific and articulable facts that an

6

occupant is violating or is about to violate the law. See United States v. Brignoni-Ponce, 422 U.S. 873, 881, 95 S. Ct. 2412, 2416 (1975); State v. Watkins, 827 S.W.2d 293, 295 (Tenn. 1992); Hughes v. State, 588 S.W.2d 296, 305 (Tenn. 1979).

When a stop is based upon the tip of an informant, the factors set forth in State v. Jacumin, 778 S.W.2d 430, 436 (Tenn. 1989), are useful in evaluating the sufficiency of the tip. Pully, 863 S.W.2d at 31. In Jacumin, our supreme court adopted the two-prong test of Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584 (1960). Jacumin, 778 S.W.2d at 436. In Aguilar, the United States Supreme Court concluded that there must be a "basis of knowledge" when an officer relies on an informant's tip. The "veracity" prong of the Aguilar-Spinelli test requires a showing that the informant is credible or the information is reliable. The Jacumin court held that:

> while independent police corroboration could make up deficiencies in either prong, each prong represents an independently important consideration that "must be separately considered and satisfied in some way."

778 S.W.2d at 436 (quoting Commonwealth v. Upton, 476 N.E.2d 548, 557 (Mass. 1985)); see Pully, 863 S.W.2d at 31. An investigatory stop based upon reasonable suspicion requires "'a lower quantum of proof than probable cause.'" Pully, 863 S.W.2d at 31.

> "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause."

Id. at 32 (quoting Alabama v. White, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416 (1990)). The question of reasonable suspicion is answered by considering the totality of the circumstances, including looking at the gravity of the public concern at stake, the degree the police intrusion advances that concern, and the severity of the intrusion. See Pully, 863 S.W.2d at 30; Watkins, 827 S.W.2d at 294.

7

The defendant first faults the information provided by Derwin by arguing that it does not state that the defendant was engaged in or about to engage in any illegal activity. The tape of Derwin's call to the dispatcher shows that she stated that the defendant had no business driving. The trial court found that under the given time and circumstances, a reasonable person could conclude that a report that someone should not be driving was, in fact, a report of D.U.I. We hold that the evidence does not preponderate against this finding.

When analyzing whether an officer had reasonable suspicion for an investigatory stop, our supreme court has distinguished between information provided by a known citizen informant and that obtained from a criminal or professional informant. State v. Cauley, 863 S.W.2d 411, 417 (Tenn. 1993); State v. Melson, 638 S.W.2d 342, 354 (Tenn. 1982). Information supplied by a criminal informant must be analyzed under the Jacumin test, while the known citizen informant is presumed to be reliable. Cauley, 863 S.W.2d at 417. Citizen informants, whether they be victims or witnesses, have necessarily gained their information through first-hand experience. Melson, 638 S.W.2d at 354-56 (citations omitted). The criminal informant provides information in exchange for some consideration -- whether it be monetary or the granting of some exemption or privilege -- while the citizen informant acts in the interest of society or personal safety. State v. Smith, 867 S.W.2d 343, 347 (Tenn. Crim. App. 1993) (citing State v. Paszek, 184 N.W.2d 836, 842-43 (1971)).

In this case, Officer Demming based her stop of the defendant upon information given to the police dispatcher by a known citizen informant, Dorinda Derwin, the clerk at the Holiday Inn. An officer may make an investigatory stop based upon a police dispatch as long as the individual or agency placing the dispatch has the requisite reasonable suspicion supported by specific and articulable facts that indicate criminal conduct. State v. Moore, 775 S.W.2d 372, 378 (Tenn. Crim. App. 1989); see

8

Whiteley v. Warden, 401 U.S. 560, 568, 91 S. Ct. 1031, 1037 (1971). The presence of reasonable suspicion may be assessed by looking to the testimony of the individual placing the dispatch or the testimony of the individuals who witnessed the information that is eventually passed on to the investigating officer. Moore, 775 S.W.2d at 378.

The defendant contends that Derwin is not a known citizen informant because even though she gave her name, location, and occupation to the dispatcher, "there is no proof she was known to the police dispatcher." The defendant argues that when the citizen is anonymous or unknown, concern over the information's reliability resurfaces due to the potential danger of false reports. See Pully, 863 S.W.2d at 31.

The name of the citizen alone is not sufficient to qualify the informant as a known citizen informant, thereby raising the presumption of reliability. Smith, 867 S.W.2d at 348 (holding that an affidavit giving the informant's name but otherwise failing to indicate who he was or how he got the information did not give probable cause for the issuance of a search warrant). For reliability to be presumed, information about the citizen's status or his or her relationship to the events or persons involved must be present. See Melson, 638 S.W.2d at 354-56 (presuming reliability when the affidavit listed the sources of the information, their relationship to the victim, and their status as witnesses to certain events); State v. Joe Ed York, No. 03C01-9609-CC-00345, Anderson County, slip op. at 5 (Tenn. Crim. App. June 12, 1997) (holding that an informant known only as a concerned citizen must be judged under the Jacumin standard). In the instant case, the citizen informant stated her name, Dorinda Derwin, and she gave her status as a clerk at the Holiday Inn. Thus, Derwin would ordinarily qualify as a known citizen informant for the presumption of reliability.

The defendant contends that the information Derwin gave to the dispatcher is not reliable because she obtained it second-hand from the security guard

9

rather than from her own personal observations. Unlike the typical citizen informant, Derwin did not gain her information through her own observations. Instead, Derwin told the dispatcher that the security guard gave her the information.

While the credibility of an anonymous informant intrinsically cannot be verified, see State v. Kelly, 948 S.W.2d 757, 761 (Tenn. Crim. App. 1996), in cases involving named citizen informants, the officer has the ability to contact the citizen informant in the event of a false report. In State v. Steven Terrence Russell, No. 02C01-9510-CC-00311, Henry County (Tenn. Crim. App. Feb. 28, 1997), this court upheld a warrantless search of a student at school based in part upon information concerning drug transactions provided by the principle who gained the information from student witnesses. The fact that the officer did not talk to the student witnesses before searching the defendant was immaterial. Id., slip op. at 5. This court held that the officer had no reason to doubt the credibility of the student witnesses or the reliability of their information because they were citizen informants and, therefore, presumed reliable. Id. (also noting the exigency of the circumstances). In this case, Derwin's information came from the security guard with whom she worked at the Holiday Inn. Like the student witnesses in Russell, there is no reason to doubt the security guard's credibility. Thus, because Derwin and the security guard can be regarded as citizen informants, Derwin's tip can be presumed reliable even though Derwin did not gain her information through personal observation.

Alternatively, the instant tip is still sufficient to support Officer Demming's reasonable suspicion even if analyzed as if it came from an anonymous citizen informant. The analysis of an anonymous tip involves consideration of the informant's basis of knowledge and reliability and of any corroborating circumstances known to the police. Pully, 863 S.W.2d at 32. "When an informant reports an incident at or near the time of its occurrence, a court can often assume that report is first-hand, and hence

10

reliable." Id. Here, Derwin reported that the security guard told her the vehicle in question had just left the Holiday Inn parking lot. Sergeant Dukes testified that within three to four minutes of hearing the dispatch, he located the vehicle at a gas station two hundred yards north of the Holiday Inn. He then radioed Officer Demming, who met up with Sergeant Dukes and the defendant. The trial court found that based upon the time stamped on the complaint card, the dispatch issued at 3:16 a.m. The trial court also noted that once Officer Demming spotted the defendant, she activated the video camera in her car at 3:18:45 a.m. This meant that the defendant exited the parking lot, Derwin called the police, and Officer Demming spotted the defendant within three minutes.

The officer's ability to corroborate the details provided by the anonymous informant helps establish the reliability of the tip. Kelly, 948 S.W.2d at 761. The officer does not have to corroborate every detail of the anonymous informant's tip, but he or she must corroborate more than a few minor aspects, especially if they are not criminal in nature. Id. (citing State v. Moon, 841 S.W.2d 336, 341 (Tenn. Crim. App. 1992)). In this case, the detailed description of the vehicle, the exact match of the license plate number, and the pinpointing of the vehicle's location as corroborated by Sergeant Dukes' and Officer Demming's observations lend credibility to Derwin's tip. Although Officer Demming stated that she would not have stopped the defendant based on his driving alone, she testified that the defendant's acceleration at a red light and the fact that he left on his blinker though he had already changed lanes, in combination with the information of a possible D.U.I. from the dispatch, caused her to stop him. This unusual driving lends some credence to the presence of criminal conduct, in this case D.U.I. See State v. Brothers, 828 S.W.2d 414, 416 (Tenn. Crim. App. 1991) (noting that driving ten miles per hour below the speed limit was consistent with the actions of intoxicated drivers).

In this case, as in <u>Pully</u>, the potential for serious harm justified the stop. <u>Pully</u>, 863 S.W.2d at 33-34. The dangers inherent in driving on the public streets while under the influence of an intoxicant are obvious. We conclude that the tip provided by Derwin is sufficient to support Officer Demming's reasonable suspicion and justified her investigatory stop of the defendant. Accordingly, we affirm the trial court's denial of the Motion to Suppress.

The trial court sentenced the defendant to five months, twenty-nine days confinement in the county jail with all but forty-eight hours to be served on probation. The D.U.I. statute, T.C.A. § 55-10-403(c), "mandates a maximum sentence for D.U.I., with the only function of the trial court being to determine what period above the minimum period of incarceration established by statute, if any, is to be suspended." <u>State v. Combs</u>, 945 S.W.2d 772, 774 (Tenn. Crim. App. 1996). Tenn. Code Ann. § 55-10-403(a)(1) provides a mandatory minimum of forty-eight hours of confinement and a mandatory maximum of eleven months, twenty-nine days. Imposition of a five-month, twenty-nine-day maximum was improper. We remand this case to the trial court for the imposition of a sentence consistent with T. C. A. § 55-10-403(a)(1) and (c).

_____
Joseph M. Tipton, Judge

CONCUR:


_____
Joe G. Riley, Judge


_____
Thomas T. Woodall, Judge