# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs May 20, 2009

## STATE OF TENNESSEE v. DONALD LOCKHART

**Direct Appeal from the Criminal Court for Loudon County**
**No. 11318     E. Eugene Eblen, Judge**

_____

**No. E2008-02046-CCA-R3-CD - Filed March 24, 2010**

_____

Appellant Donald Lockhart was indicted by a Loudon County Grand Jury for driving under the influence in violation of Tennessee Code Annotated section 55-10-401. The trial court denied a motion to suppress evidence derived from the stop of Appellant's vehicle. Thereafter, Appellant pled guilty to the charge, but under Tennessee Rule of Criminal Procedure 37(b) preserved the following issue for appeal: "Whether the trial judge erred by failing to suppress evidence gathered pursuant to a traffic stop of the [Appellant] that was conducted by the Lenoir City Police Department and which the [Appellant] alleged was conducted in the absence of a valid warrant, probable cause or reasonable suspicion, all in violation of [Appellant's] constitutional rights to be free of unreasonable searches and seizures?" On appeal, he argues that the citizen informant's tip, combined with an officer's determination that Appellant was impaired during a welfare check minutes before the stop, was insufficient to establish reasonable suspicion. Upon review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., J., joined. JAMES CURWOOD WITT, JR., J., filed a concurring opinion.

Kent L. Booher, Lenoir City, Tennessee, for the appellant, Donald Lockhart.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Russell Johnson, District Attorney General; Frank Harvey, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The State called two witnesses at the suppression hearing. Lenoir City Police Department Lieutenant Mike Tennell testified that he conducted a welfare check on Appellant on the night of April 28, 2006, after receiving reports from family members that he was contemplating suicide. Lieutenant Tennell discovered a blue-green Ford Taurus parked in front of Appellant's house. He found Appellant inside the house, slouched on a chair and "extremely intoxicated." Lieutenant Tennell, a twenty-year veteran of the force, said the Appellant was "lucky to stand up." After conducting the welfare check, Lieutenant Tennell left Appellant's house.

A few minutes later, the police received a call from Appellant's wife indicating he was driving by the house where she was staying. When the dispatcher relayed the information and a description of the car–a green Ford Taurus–over the police radio system, Lieutenant Tennell immediately recognized that the call concerned Appellant. He informed the dispatcher, as well as the other officers listening, that he had seen Appellant five to ten minutes earlier and that he believed Appellant was intoxicated.

Lieutenant Tennell said that he was at Appellant's residence around "10:30 to 10:50, 10:55," and the call from dispatch was around 11:00. Lieutenant Tennell said that "[i]t was readily apparent to [him] that the same person that had called for us to do a welfare check on [Appellant] had called back to say [Appellant] was in [Appellant's] car now at their residence or had driven by their residence." The distance between Appellant's house and the house where Appellant's wife was staying was approximately six blocks. Further, Lieutenant Tennell knew Appellant and was familiar with his vehicle; Lieutenant Tennell recalled that the police had responded to "many calls" from Appellant's wife around the time period in question.

Lenoir City Patrolman Jeremy Dishner testified that he heard the dispatch concerning Appellant and then Lieutenant Tennell's report that the subject was intoxicated. Officer Dishner observed Appellant driving between 4th Avenue and 5th Avenue, approximately four blocks from the house where Appellant's wife was staying. Although he did not see Appellant drive suspiciously, Officer Dishner stopped Appellant on the basis of the information he had from dispatch regarding the call from Appellant's wife and the information from Lieutenant Tennell. Officer Dishner was not familiar with the Appellant and had never had contact with him. Officer Dishner said that the Appellant was under the influence and described his level of impairment as significant. Appellant was ultimately arrested and charged with driving under the influence.

The trial court denied Appellant's motion to suppress.[1] Appellant then pled guilty to the charge, but specifically preserved his appeal of the suppression decision under Rule 37(b). He now contends that the trial court erred in denying his motion, arguing that Officer Dishner did not have a constitutional basis for stopping him.

## II. Analysis

As noted above, this appeal comes via a properly preserved certified question under Tennessee Rule of Criminal Procedure 37(b)(2). See State v. Armstrong, 126 S.W.3d 908, 912 (Tenn. 2003); State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988). The issue it presents is dispositive. See State v. Oliver, 30 S.W.3d 363, 364 (Tenn. Crim. App. 2000). Although we are analyzing a certified question, we use the same standard of review as we would to analyze the underlying issue: the denial of a motion to suppress. See State v. Hanning, 296 S.W.3d 44, 48 (Tenn. 2009).

In reviewing a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. Nevertheless, appellate courts will review both questions of law and the trial court's application of law to the facts purely de novo. See Hanning, 296 S.W.3d at 48; State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). Furthermore, the State, as the prevailing party, is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23.

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution provide protection for citizens against "unreasonable searches and seizures."[2] Generally, a warrantless search is presumptively unreasonable, thus violative of constitutional protections. See State v. Walker, 12 S.W.3d 460, 467 (Tenn. 2000); see also State v. Keith, 978 S.W.2d 861, 865 (Tenn. 1998). Evidence derived from such a search is subject to suppression unless the State "demonstrates by a preponderance of

---

[1] The record does not contain either a written order from the trial court or the transcript of the court's order. Nevertheless, it is clear both that the court denied the motion and, as discussed below that the denial was proper.

[2] In State v. Downey, our supreme court noted that "article I, section 7 is identical in intent and purpose with the Fourth Amendment." 945 S.W.2d 102, 106 (Tenn. 1997) (quotation marks omitted).

the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement." Keith, 978 S.W.2d at 865; see also State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997). One of the permissible exceptions is met when an officer temporarily seizes a citizen if the officer "has a reasonable suspicion, based on specific and articulable facts, that a criminal offense has been, is being, or is about to be committed." Keith, 978 S.W.2d at 865; see also Hanning, 296 S.W.3d at 48. Thus, the question here is whether the record demonstrates that Officer Dishner had a reasonable suspicion that Appellant was committing or had committed a crime. See Hanning, 296 S.W.3d at 49.

While it is not possible to precisely articulate what "reasonable suspicion" means, it is a "common sense" and "nontechnical" conception dealing "with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Keith, 978 S.W.2d at 867 (quoting Ornelas v. United States, 517 U.S. 690, 699, (1996)). At a minimum, however, there must be more than an officer's mere "inchoate and unparticularized suspicion or hunch." Hanning, 296 S.W.3d at 49 (quotation marks omitted).

The analysis of whether an officer had reasonable suspicion is "a fact-intensive and objective analysis," which requires "reviewing the record for specific and articulable facts." Id. (quotation marks omitted); see also State v. Garcia, 123 S.W.3d 335, 344 (Tenn. 2003). In determining whether an officer had reasonable suspicion, "a court must consider the totality of the circumstances." Keith, 978 S.W.2d at 867; see also Garcia, 123 S.W.3d at 344. As our supreme court has explained:

> Circumstances relevant to the evaluation include, but are not limited to, the officer's personal objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. A court must also consider the rational inferences and deductions that a trained officer may draw from the facts and circumstances known to him–inferences and deductions that might well elude an untrained person. Finally, the content, quality, and quantity of information possessed by police must be assessed in determining whether it is sufficiently reliable to support a finding of reasonable suspicion.

Keith, 978 S.W.2d at 867 (quotation marks and citations omitted). Moreover, "reasonable suspicion can be established with information that is different in quality or content than that required to establish probable cause and can arise from information that is less reliable than that required to show probable cause." Hanning, 296 S.W.3d at 49 (quotation marks omitted); see also Keith, 978 S.W.2d at 866; State v. Simpson, 968 S.W.2d 776, 781-82 (Tenn. 1998); State v. Pulley, 863 S.W.2d 29, 32 (Tenn. 1993). However, there must be "some minimal level of objective justification for making the stop." Keith, 978 S.W.2d at

867 (quoting United States v. Sokolow, 490 U.S. 1, 7-8, 109 S. Ct. 1581, 1585 (1989)). "An officer may make an investigatory stop based upon a police dispatch as long as the individual or agency placing the dispatch has the requisite reasonable suspicion supported by specific and articulable facts that indicate criminal conduct." State v. Luke, 995 S.W.2d 630, 636 (Tenn. Crim. App. 1998). Reasonable suspicion can also be based upon a tip from an informant. See, e.g., Pulley, 863 S.W.2d at 31. Tennessee law distinguishes between "citizen informants" and "criminal informants." See State v. Cauley, 863 S.W.2d 411, 417 (Tenn. 1993). It also distinguishes between known and anonymous informants. Compare id. (known informant) with Hanning, 296 S.W.3d at 50 (anonymous informant). The law provides that information provided by a known citizen witness "is presumed to be reliable," and therefore "the prosecution is not required to establish either the credibility of the informant or the reliability of his information." Cauley, 863 S.W.2d at 417 (citing State v. Melson, 638 S.W.2d 342, 354-56 (Tenn. 1982)).

In this case, Officer Dishner had an ample basis for a reasonable suspicion that Appellant was driving under the influence in violation of Tennessee Code Annotated section 55-10-401. We begin by noting that, although there was a tip from a known citizen, the critical information in this case came from Lieutenant Tennell. Just minutes before Officer Dishner stopped Appellant, Lieutenant Tennell personally visited Appellant during a welfare check and determined that he was intoxicated to the point of being "really impaired." Appellant does not challenge the validity of Lieutenant Tennell's welfare check, nor the veracity of his opinion. Officer Dishner knew Lieutenant Tennell believed Appellant was too intoxicated to drive and was entitled to rely on that information. See Keith, 978 S.W.2d at 867. Moreover, when Appellant's wife called to report that Appellant was driving around her house, the information she provided was presumed to be reliable because she was a known citizen informant. See Cauley, 863 S.W.2d at 417. As in Cauley, where the citizen's report merely placed the defendant's brother's car at the scene of the crime–it did not allege the defendant committed a crime–the information provided by Appellant's wife was "innocuous by itself," and its significance lay with the information previously gathered by Lieutenant Tennell. Id. at 417-18.[3] When Lieutenant Tennell heard the description of the car given by the dispatcher, he immediately recognized it as Appellant's, and he immediately recognized that Appellant was likely driving under the influence. Because this information was highly reliable, Officer Dishner had reasonable suspicion to initiate a stop. Accordingly, the trial court was correct in denying the motion to suppress.

### III. Conclusion

---

[3] The record is unclear regarding whether Appellant's wife accused Appellant of driving under the influence, stalking, or something else. The record does suggest, however, that there had been a series of calls concerning Appellant's behavior toward her during the days leading up to his arrest.

Upon review of the record and the parties' briefs, for the foregoing reasons, the judgment of the trial court is affirmed.

_____
NORMA McGEE OGLE, JUDGE