# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs December 9, 2014

## STATE OF TENNESSEE v. CHRISTIAN PHILIP VAN CAMP

### Appeal from the Circuit Court for Cocke County
### No. 4095     Rex H. Ogle, Judge

_____

### No. E2014-00667-CCA-R3-CD - Filed December 29, 2014

_____

Defendant, Christian Philip Van Camp, was indicted for driving under the influence, driving while his blood alcohol was in excess of the legal limit, and failing to maintain his proper lane of traffic. Defendant moved to suppress evidence obtained as a result of the traffic stop, arguing that it was not properly supported by either probable cause or reasonable suspicion. After a hearing, the trial court denied his motion. After a bench trial, Defendant was convicted as charged. On appeal, Defendant argues that the trial court erred in failing to suppress the evidence obtained as a result of the unconstitutional seizure of his vehicle. Upon our review of the record, we conclude that the officer had reasonable suspicion to conduct a brief investigatory stop based on information received from a known citizen informant. Therefore, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ALAN E. GLENN, J., joined.

Thomas V. Testerman, Newport, Tennessee, for appellant, Christian Philip Van Camp.

Herbert H. Slatery III, Attorney General & Reporter; Clarence E. Lutz, Senior Counsel; James Dunn, District Attorney General; and Tonya Thornton, Assistant District Attorney General, for the appellee, State of Tennessee

## OPINION

*Factual Background*

In the early morning hours of September 2, 2012, Ed Williams, a resident of Newport, Tennessee, was delivering newspapers. As he turned onto Morristown Highway, he noticed a set of headlights coming toward him from the opposite direction. He realized that the lights belonged to a vehicle traveling in the wrong lane of traffic. Mr. Williams pulled off the highway into the parking lot of a nearby shopping center in order to avoid a head-on collision. He called 911 and reported that a maroon-red, "bigger than average size" vehicle was traveling in the wrong lane. The vehicle made a left turn toward Newport and continued in the wrong lane. He gave his name to the 911 dispatcher and explained why he was out on the roads around 3:00 in the morning.

Around the same time, Newport Police Officer Joshua Holt was traveling on Cosby Highway. As he was about to turn onto West Broadway, he received a report from the dispatcher to be on the lookout ("BOLO") for a large, deep red or maroon, older model car traveling in the wrong lane on West Broadway. Less than two minutes after receiving the call, Officer Holt saw Defendant's vehicle, which matched the description in the BOLO dispatch. The vehicle was traveling eastbound and was straddling the line between the two eastbound lanes "left of center." Officer Holt, who was traveling westbound at that point, made a U-turn to follow the vehicle. As he did so, he observed in his rearview mirror Defendant's car "swerve" to the right and "almost hit the curb." Officer Holt followed Defendant as he turned onto Cosby Highway. Officer Holt then activated his blue lights and pulled over Defendant's vehicle in the parking lot of a post office.

After stopping the vehicle, Officer Holt detected a strong odor of alcohol as he spoke to Defendant. Defendant told Officer Holt that he was going to Bybee, which is in the opposite direction of the direction Defendant was traveling. Upon exiting the vehicle, Defendant appeared unsteady on his feet. After unsuccessfully performing several field sobriety tests, Defendant was placed under arrest on suspicion of driving under the influence ("DUI"). Defendant consented to a breathalyzer test, which revealed a blood alcohol concentration of .14.

Defendant was indicted by a Cocke County Grand Jury of one count of driving under the influence , one count of driving while his blood alcohol was in excess of the legal limit ("DUI per se"), and one count of failing to maintain his proper lane of traffic. Defendant filed a motion to suppress evidence obtained as a result of the warrantless seizure of his vehicle. Both Mr. Williams and Officer Holt testified at the suppression hearing, and a video from Officer Holt's patrol vehicle was entered into evidence. At the conclusion of the hearing, the trial court found "that probable cause more than existed to justify the officer's stop," and denied Defendant's motion.

Defendant waived his right to a jury trial. A bench trial was conducted on March 27, 2014. Defendant renewed his motion to suppress, which the trial court denied. Mr. Williams and Officer Holt testified consistently with their testimony at the suppression hearing, and the video of the stop was played in its entirety. Defendant did not testify or present any witnesses. Defendant made a motion for judgment of acquittal, which the trial court overruled. The trial court found Defendant guilty on all charges and merged the two DUI convictions. Defendant was sentenced to a total effective sentence of 11 months and 29 days, all suspended but 48 hours, with the balance to be served on supervised probation.

Defendant filed a motion for a new trial on March 31, 2014. Defendant prematurely filed his notice of appeal on April 3, 2014, while his motion for new trial was still pending.[1] The trial court entered an order denying the motion for new trial on June 9, 2014. This appeal followed.

*Analysis*

On appeal, Defendant alleges that the trial court erred in failing to grant his motion to suppress. He argues that the stop of his vehicle was unconstitutional because the officer lacked reasonable suspicion, supported by specific and articulable facts, to believe that an offense had been or was about to be committed. Defendant concedes that if the evidence obtained pursuant to the stop of his vehicle was, in fact, properly admitted, then the evidence supporting his convictions is sufficient and his convictions are otherwise proper.

In reviewing a trial court's ruling on a motion to suppress, this Court will uphold the trial court's findings of fact "unless the evidence preponderates otherwise." *State v. Bell*, 429 S.W.3d 524, 528 (Tenn. 2014) (citing *State v. Climer*, 400 S.W.3d 537, 556 (Tenn. 2013)). Witness credibility, the weight and value of the proof, and the resolution of conflicts in the proof "are matters entrusted to the trial court as the trier of fact." *Id*. at 529. "The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000) (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The trial court's resolution of questions of law and application of the law to the facts are reviewed de novo with no presumption of correctness. *State v. Day*, 263 S.W.3d 891, 900 (Tenn. 2008). When reviewing a trial court's ruling on a motion to suppress, this Court "may consider the entire record, including not only the proof offered at the hearing, but also the evidence

---

[1]The trial court did not lose jurisdiction to rule on the motion for new trial, and Defendant's premature notice of appeal is deemed timely, pursuant to Rule 4(e) of the Tennessee Rules of Appellate Procedure.

adduced at trial." *State v. Williamson*, 368 S.W.3d 468, 473 (Tenn. 2012) (citing *State v. Henning*, 975 S.W.2d 290, 297-99 (Tenn. 1998)).

Both the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution guarantee the right to be free from unreasonable searches and seizures. Tennessee's constitutional protections regarding searches and seizures are identical in intent and purpose to those in the federal constitution. *State v. Turner*, 297 S.W.3d 155, 165 (Tenn. 2009). "[A] warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997). The burden is on the State to prove that a warrantless seizure was constitutionally permissible. *State v. Nicholson*, 188 S.W.3d 649, 656-57 (Tenn. 2006); *Henning*, 975 S.W.2d at 298.

State and federal courts have recognized three levels of police-citizen interactions: (1) a full-scale arrest, which must be supported by probable cause, *see Brown v. Illinois*, 422 U.S. 590, 605 (1975); *State v. Ferrante*, 269 S.W.3d 908, 913 (Tenn. 2008); (2) a brief investigatory stop, which must be supported by reasonable suspicion of criminal activity, *see Terry v. Ohio*, 392 U.S. 1, 27 (1968); *State v. Williams*, 185 S.W.3d 311, 315 (Tenn. 2006); and (3) a "consensual" police-citizen encounter, which requires no objective justification, *see Florida v. Bostick*, 501 U.S. 429, 434 (1991); *State v. Daniel*, 12 S.W.3d 420, 424 (Tenn. 2000). Only the first two categories "rise to the level of a 'seizure' for constitutional analysis purposes." *Day*, 263 S.W.3d at 901. A seizure occurs when, under the totality of the circumstances, a reasonable person would not have felt free to leave. *State v. Hanning*, 296 S.W.3d 44, 49 (Tenn. 2009) (quoting *Williams*, 185 S.W.3d at 316). In most situations, when an officer activates his blue lights, the officer has initiated a seizure which must be justified by either probable cause or reasonable suspicion. *Id*. (citing *State v. Pulley*, 863 S.W.2d 29, 30 (Tenn. 1993)).

Reasonable suspicion is a lower standard of proof than probable cause, but must be more than the officer's "inchoate and unparticularized suspicion or 'hunch.'" *Hanning*, 296 S.W.3d at 49 (quoting *Day*, 263 S.W.3d at 902). The record must show "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [an] intrusion." *Day*, 263 S.W.3d at 903 (quoting *Terry*, 392 U.S. at 21). Appellate courts must "engage in a 'fact-intensive and objective analysis,' reviewing the record for 'specific and articulable facts, that the defendant had committed, or was about to commit, a criminal offense.'" *Hanning*, 296 S.W.3d at 49 (quoting *Williams*, 185 S.W.3d at 318-19). The State must establish by a preponderance of the evidence that the officer's actions were supported by either probable cause or reasonable suspicion.

*Day*, 263 S.W.3d at 905 (citing *State v. Hannah*, 259 S.W.3d 716, 720 (Tenn. 2008); *Yeargan*, 958 S.W.2d at 629).

In order to determine whether an investigatory detention of a vehicle is supported by reasonable suspicion, this Court must consider the totality of the circumstances, including the objective observations of the police officer, information obtained from other officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. *Day*, 263 S.W.3d at 903 (citing *Alabama v. White*, 496 U.S. 325 (1990); *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992)). "Reasonable suspicion 'is dependent upon both the content of information possessed by police and its degree of reliability.'" *Id*. (quoting *White*, 496 U.S. at 330).

Reasonable suspicion may be based upon information received by police officers from citizen complainants, whether known or anonymous. Information received from an anonymous informant must include a showing of both the basis of the informant's knowledge and the informant's credibility in order to be considered reliable. *Hanning*, 296 S.W.3d at 49 (citing *Day*, 263 S.W.3d at 903; *Pulley*, 863 S.W.2d at 31). However, "information from a known citizen informant is presumed reliable," especially "where circumstances indicate the information was gained from first-hand experience, and the motivation for communicating with law enforcement authorities is based on 'the interest of society or personal safety.'" *Day*, 263 S.W.3d at 904 (quoting *State v. Luke*, 995 S.W.2d 630, 636 (Tenn. Crim. App. 1998)). In order for this presumption to apply, "information about the citizen's status or his or her relationship to the events or persons involved must be present." *Luke*, 995 S.W.2d at 637.

In assessing the reasonableness of a stop based on information received from a citizen complainant, "[t]he content of the tip is also a crucial factor and, in particular, the level of danger that the tip reveals." *Pulley*, 863 S.W.2d at 32; *see Day*, 263 S.W.3d at 905 (holding that another driver flashing her lights, waving her arms, and pointing at the defendant's vehicle to get the officer's attention was not sufficient to create reasonable suspicion of criminal activity and justify an investigatory stop). Our supreme court has noted that "the reasonableness of seizures less intrusive than a full-scale arrest is judged by weighing the gravity of the public concern, the degree to which the seizure advances that concern, and the severity of the intrusion into individual privacy." *Pulley*, 863 S.W.2d at 30. An investigatory stop may be initiated on the basis of a report of reckless driving, "even without corroboration of any criminal activity by law enforcement officials," due to the "sufficiently high risk of imminent injury or death to members of the public." *Hanning*, 296 S.W.3d at 52, 54 (distinguishing an anonymous report of reckless driving from the anonymous report of a concealed weapon in *Florida v. J.L.*, 529 U.S. 266 (2000)); *see also Navarette v. California*, 134 S.Ct. 1683, 1690 (2014) (finding that

an anonymous tip was adequately reliable under the circumstances "to provide the officer with reasonable suspicion . . . to execute a traffic stop" for driving under the influence).

The citizen complainant need not communicate directly with the officer conducting the investigatory stop. "An officer may make an investigatory stop based upon a police dispatch as long as the individual or agency placing the dispatch has the requisite reasonable suspicion supported by specific and articulable facts that indicate criminal conduct." *Luke*, 995 S.W.2d at 636 (citing *State v. Moore*, 775 S.W.2d 372, 378 (Tenn. Crim. App. 1989)). At the suppression hearing, the State may present "the testimony of the individuals who witnessed the information that is eventually passed on to the investigating officer," *id.*; it is not necessary to have the police dispatcher testify, since he or she "simply served as a conduit in relaying the information" to the investigating officer. *Moore*, 775 S.W.2d at 378.

In this case, Mr. Williams called 911 to report a vehicle being driven on the wrong side of the road. At trial, he testified that he gave the dispatcher his name and his reason for being in that area so early in the morning. We conclude that Mr. Williams was a known citizen informant, and the information he provided to police via the 911 dispatcher can be presumed reliable. Mr. Williams witnessed Defendant's reckless driving first-hand, and he called 911 because he "didn't want nobody [sic] to get hurt." *See Day*, 263 S.W.3d at 904 (quoting *Luke*, 995 S.W.2d at 636). It does not matter that Mr. Williams did not convey this information directly to Officer Holt "as long as the individual or agency placing the dispatch has the requisite reasonable suspicion supported by specific and articulable facts that indicate criminal conduct." *Luke*, 995 S.W.2d at 636 (citing *Moore*, 775 S.W.2d at 378).

Furthermore, Officer Holt testified that he observed that the car described in the dispatch was straddling the two lanes of eastbound traffic "left of center," before swerving toward the right curb. Even assuming *arguendo* that this unusual driving is not itself illegal, it is consistent with criminal activity, i.e., an impaired driver overcorrecting from the left to the right side of the road. *See Hanning*, 296 S.W.3d at 50 ; *Luke*, 995 S.W.2d at 638. Moreover, because the report indicated reckless driving that placed other motorists in danger—specifically, driving on the wrong side of the road—Officer Holt was not required to corroborate any details of actual criminal activity. *See Hanning*, 296 S.W.3d at 52; *Navarette*, 134 S.Ct. at 1691 ("[A]n officer who already has such a reasonable suspicion need not surveil a vehicle at length in order to personally observe suspicious driving.").

Defendant argues that the video evidence does not corroborate Officer Holt's testimony about Defendant's driving. Specifically, he argues that the video shows that his car was crossing the line between the two lanes for no more than four seconds,

consistent with legally changing lanes, and there is no indication of swerving. He relies upon our supreme court's decision in *Binette*, 33 S.W.3d at 220, and this Court's decision in *State v. Alora D. Puckett*, No. E2002-01959-CCA-R3-CD, 2003 WL 21638048 (Tenn. Crim. App. 2003)*, perm. app. denied* (Tenn. Dec. 8, 2003). However, this case is clearly distinguishable from those two cases in that the reasonable suspicion in this case is based upon the information of a known citizen informant and Officer Holt's corroboration of the details contained therein. Additionally, Officer Holt testified that the swerve toward the curb occurred while he was turning around and, therefore, out of the line of sight of the camera. The trial court found Officer Holt's testimony to be credible, and we are not in a position to second-guess that determination. *See Odom*, 928 S.W.2d at 23.

*Conclusion*

We conclude that Officer Holt's investigatory stop was sufficiently supported by reasonable suspicion and the evidence discovered as a result thereof was properly admitted at trial. Therefore, we affirm the judgments of the trial court.

_____
TIMOTHY L. EASTER, JUDGE