# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### August 17, 2011 Session

## STATE OF TENNESSEE v. GREGORY KEITH WIGGINS AND ROBERT BROWN

### Direct Appeal from the Circuit Court for Williamson County
Nos. 034003-A; 034003-B      Jeffrey S. Bivins, Judge

---

### No. M2010-02518-CCA-R3-CD - Filed March 20, 2012

---

The Defendant, Gregory Keith Wiggins, pled guilty to theft of property valued over $500, a Class E felony, evading arrest creating a risk of death or injury, a Class D felony, and driving on a revoked license, eleventh offense, a Class A misdemeanor. He was sentenced as a Range II multiple offender to concurrent terms of three years' confinement for theft and four years' confinement for evading arrest. He was sentenced to a consecutive term of eleven months, twenty-nine days' confinement for driving on a revoked license for an effective sentence of four years, eleven months, twenty-nine days. The Defendant, Robert Brown, pled guilty to theft of property valued under $500, a Class A misdemeanor. He was sentenced to eleven months, twenty-nine days' confinement. Each Defendant reserved a certified question of law related to their seizure by law enforcement officers. The Defendant Wiggins also appeals the trial court's sentencing determinations. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed.**

DONALD P. HARRIS, SR. J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ROBERT W. WEDEMEYER, J., joined.

Kent K. Stanley, Franklin, Tennessee, for the appellant, Gregory K. Wiggins.

Steven M. Garner, Franklin, Tennessee, for the appellant, Robert Brown.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Kim R. Helper, District Attorney General; and Mary Katharine White, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## Background

This case concerns the August 2008 theft of a car alarm system from a Williamson County Circuit City and the subsequent pursuit of the suspects by the police. The Williamson County Grand Jury indicted both Defendants for theft over $500 and conspiracy to commit theft over $1000. Additionally, the grand jury charged Defendant Wiggins with evading arrest and driving on a revoked license, eleventh offense.

Incident to a motion to suppress evidence filed by the Defendants, the trial court was presented with recorded telephone calls and radio transmissions made by the City of Franklin Police Department and corresponding transcripts of those calls and transmissions. On August 12, 2008, the Franklin Police Department received a telephone communication from a person who identified himself as Matt Bessant.[1] He reported that two black males were leaving Circuit City in Franklin "making threatening remarks, cause we pretty much know that they stole stuff from our store." Mr. Bessant said the two men were in a 2006 or 2007 gray Lincoln Navigator with tinted windows and Tennessee tags, and he gave information about the movement of the vehicle as he observed it departing the area. When asked what was "supposedly" stolen, Mr. Bessant identified the item as a keyless entry, remote start car alarm. He stated "[w]e would love to press charges if we can actually confirm that it's in the car." He identified the threatening remarks as "racial slurs towards one of the managers; told them they'd step outside and they would settle this." Mr. Bessant said that the two men were asked to leave because "we knew what they'd done" but did not have the authority stop them, "something the company doesn't do." He said the two men were suspected of stealing from Circuit City on a previous occasion.

By radio transmission, the Franklin Police Department dispatcher asked patrolmen in the area to be on the lookout for two black men in a gray Lincoln Navigator who were suspected of shoplifting. A radio transmission showed that an officer got close enough to the vehicle to obtain a license plate number. Another transmission showed that the driver of the Lincoln Navigator took off when he saw the police car. At some point, the Lincoln Navigator was northbound on Interstate 65. The Brentwood Police Department and the Metropolitan Nashville Police Departments were alerted. At one point, speeds of eighty-five miles per hour were reported. A Franklin officer asked the dispatcher to notify Brentwood that when the suspects were apprehended, they would be charged with felony evading. A radio transmission reported that six or seven Brentwood patrol cars were in pursuit. An

---

[1] A complete transcript of the telephone call is attached as Appendix A.

officer reported that the vehicle had been stopped south of the Harding Place exit in Nashville and that a Python keyless entry car alarm was found in the vehicle.

The parties agreed that the motion to suppress would be determined by the trial court solely on the basis of the telephone call and radio transmissions. The trial court determined that Mr. Bessant gave sufficient information to establish himself as an agent for Circuit City and, thus, establish himself as a citizen informant. As such, the information he provided would be presumed reliable under the law. The court found "this information is sufficient to establish reasonable suspicion for the stop in this matter. And in the Court's opinion, that is the proper standard for the Court to apply here."

On August 17, 2010, the Defendant Wiggins pled guilty to theft over $500, a class E felony, evading arrest creating a substantial risk of death, a Class D felony, and driving on a revoked license, eleventh offense, a Class A misdemeanor. The Defendant Brown pled guilty to theft of property under $500. Both pleas were made reserving a certified question of law agreed upon by the trial judge, the district attorney, and defense counsel to be dispositive of the case, and the certified question was stated on the judgment documents as follows:

> Whether the evidence seized from the [Defendant] should have been suppressed because the stop of the [Defendant's] vehicle by the police was not supported by probable cause or reasonable suspicion in violation of the Fourth Amendment to the U.S. Constitution and Article 1, § 7, of the Tennessee Constitution.

The charge of conspiracy to commit theft of property having a value over $1000 was dismissed by the State.

A sentencing hearing was held on November 8, 2010. The trial court sentenced the Defendant Wiggins to three years for the theft offense, four years for felony reckless endangerment, and eleven months, twenty-nine days for driving on a revoked license, eleventh offense. The theft and reckless endangerment offenses were ordered to be served concurrently and the driving on a revoked license offense was ordered to be served consecutively with the other two offenses, for an effective sentence of four years, eleven months, twenty-nine days.

On appeal, both Defendants contend that the trial court incorrectly found that the 9-1-1 caller was a citizen informant. They argue that the trial court should have applied the *Jacumin* standard and that under the standard, there was insufficient evidence to establish probable cause or reasonable suspicion to support a police stop. The Defendant Wiggins also

contends that the trial court erred by not properly considering the evidence presented at the sentencing hearing.

## Analysis

### 1. Denial of Motion to Suppress

When reviewing a trial court's ruling on a motion to suppress, "the trial court's findings of fact in the suppression hearing will be upheld unless the evidence preponderates" to the contrary. *State v. Hanning*, 296 S.W.3d 44, 48 (Tenn. 2009). Ordinarily, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). "But when a court's findings of fact at a suppression hearing are based solely on evidence that does not involve issues of credibility, such as . . . videotape evidence . . ., the rationale underlying a more deferential standard of review is not implicated." *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000). "[W]hen a trial court's findings of fact on a motion to suppress are based solely on evidence that does not involve issues of credibility, appellate courts are just as capable to review the evidence and draw their own conclusions." *Id.* In such a case, "a reviewing court must examine the record de novo without a presumption of correctness." *Id.*, *see also State v. Payne*, 149 S.W.3d 20, 25 (Tenn. 2004). Here, because the trial court explicitly based its decision to deny the motion to suppress on its review of the recordings and transcripts, the *Binette* standard applies. Of course, our scope of review on questions of law is de novo, and the application of the law to the facts is a question of law. *Hanning*, 296 S.W.3d at 48; *State v. Turner*, 297 S.W.3d 155, 160 (Tenn. 2009).

The State contends the certified question is too general to confer jurisdiction on this court and cites *State v. Bradley Hawks*, No. W2008-02657-CCA-R3-CD (Tenn. Crim. App. Feb. 19, 2010), *perm. app. denied* (Tenn. June 16, 2010). In *Hawks*, the certified question was: "Whether the search and arrest of the defendant was unconstitutional in violation of Article 1, Section 7 of the [Tennessee Constitution] and the 4th Amendment of the U.S. Constitution." *Id.* at *2. The question was held to be overly broad because it failed to "identify the scope and limits of the legal issue reserved. *Id.* at *4. The issue in this case is limited to whether the stop was supported by probable cause or reasonable suspicion. In our view, the issue reserved sufficiently identifies the scope and limits of the legal issue.

Next, the State contends the certified issue is not dispositive because once the Defendants chose to commit the crime of felony evading arrest, the police had probable cause to arrest the Defendants regardless of whether the initial stop was illegal. This assertion does not take into account our evading arrest statute. Tennessee Code Annotated section 39-16-

603(b)(1) provides: "It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop." Subsection (2), however, provides: "It is a defense to prosecution under this subsection (b) that the attempted arrest was unlawful." If we approved the position of the State, a police officer could turn on its blue lights behind a citizen for any reason or for no reason at all, stop the vehicle, and search any person who attempted to evade the stop. We decline to approve such a position and agree with the trial court that the certified question is dispositive of this case.

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect against unreasonable searches and seizures. The stop of a vehicle and the detention of its occupants constitutes a seizure within the meaning of both the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution. *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *Binette*, 33 S.W.3d at 218. "A warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997). A warrant is not required for an investigatory stop if the officer has "a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." *State v. Bridges*, 963 S.W.2d 487, 492 (Tenn. 1997) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). Probable cause is not required for an investigatory stop. *State v. Coleman*, 791 S.W.2d 504, 505 (Tenn. Crim. App. 1989) (citing *Terry*, 391 U.S. at 27; *Hughes v. State*, 588 S.W.2d 296, 305 (Tenn. 1979)).

The Tennessee Supreme Court has stated that a "'[r]easonable suspicion is a less demanding standard than probable cause.'" *Bridges*, 963 S.W.2d at 492 (quoting *Alabama v. White,* 496 U.S. 325, 330 (1990)). Reasonable suspicion for an investigatory stop will be found to exist only when the events which preceded the stop would cause an objectively reasonable police officer to suspect criminal activity on the part of the individual stopped. *State v. Levitt*, 73 S.W.3d 159, 172 (Tenn. Crim. App. 2001); *State v. Norword*, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996). In *State v. Pulley*, 863 S.W.2d 29 (Tenn. 1993), our supreme court noted, however, that "'reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.'" *Id.* at 32 (quoting *White*, 496 U.S. at 330). The likelihood of criminal activity required for reasonable suspicion is not as great as that required for probable cause, and is "considerably less" than would be needed to satisfy a preponderance of the evidence standard. *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *see also State v. Keith*, 978 S.W.2d 861, 867 (Tenn. 1998).

"'[A]n officer may make an investigatory stop based upon a police dispatch as long as the individual or agency placing the dispatch has the requisite reasonable suspicion supported by specific and articulable facts that indicate criminal conduct.'" *State v. Walter Williams,* No. M2004-01781-CCA-R3-CD, at *3 (Tenn. Crim. App. June 22, 2005) (quoting *State v. Luke*, 995 S.W.2d 630, 636 (Tenn. Crim. App. 1998)), *perm. app. denied* (Tenn. Nov. 7, 2005).

When an informant is a member of the criminal community, the reliability of his information is determined under the *Aguilar-Spinelli* standard. *See Spinelli v. United States*, 393 U.S. 410 (1969); *see also Aguilar v. Texas*, 378 U.S. 108 (1964). Under this standard, both the basis of the informant's knowledge and the credibility or the reliability of the information must be shown. *State v. Jacumin*, 778 S.W.2d 430, 432 (Tenn. 1989). When information is gathered from a citizen with no ties to the criminal community, the reliability of the information is presumed. *See State v. Melson*, 638 S.W.2d 342, 355 (Tenn. 1982). Thus, information obtained from a citizen informant is not subject to the two-prong reliability test. Citizen informant information is presumed reliable because the informant has necessarily gained their information through first-hand experience, and their motivation for communicating with the authorities is based on the "interest of society or personal safety." *Luke*, 995 S.W.2d at 636. In order to be presumed reliable, however, there must be information about the citizen informant's status or his relationship to the events or persons involved. *Melson*, 638 S.W.2d at 354-56.

In the case before the court, the Franklin Police Department dispatcher had information from an informant who identified himself by name, Matt Bessant. The caller made statements from which it sufficiently could be determined that he was an employee of Circuit City and that his information was based upon personal observations. He said that the employees had "pretty much" determined that two black males had stolen an item from their store. He knew that the stolen item was a keyless entry alarm device. He stated that when the individuals were confronted by the manager, they became threatening. He gave a physical description of the suspects, a description of their vehicle, and described the vehicle's movement. There was nothing about the nature of the information that would cause an objective law enforcement officer to question its reliability. In our view, the dispatcher was justified in determining that the caller was a citizen informant and that the information provided was more than sufficient to create a reasonable suspicion that the persons described were engaged in criminal activity. We conclude that the trial court correctly determined that Mr. Bessant was a citizen informant and that the information he provided to the police created a reasonable suspicion that the Defendants were engaged in criminal activity. The trial court correctly denied the motion to suppress.

## 2. Sentencing Issues

The Defendant Wiggins contends that the trial court erred by not properly considering the evidence presented during the sentencing hearing. As this court understands the issues raised, the Defendant Wiggins requests a de novo review of his sentencing because the trial court did not affirmatively state that it had read the presentence report, gave his written allocution little weight, and misinterpreted a letter from a community corrections program in Shelby County stating that the Defendant had been accepted into that program.

An appellate court's review of a challenged sentence is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d) (2010). The Sentencing Commission Comments to this section state that the defendant bears the burden of establishing that the sentence is improper. When the trial court follows the statutory sentencing procedure and gives due consideration to the factors and principles relevant to sentencing, this court may not disturb the sentence. *See State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (citing *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 2001)).

Tennessee Code Annotated section 40-35-401(a) provides, in part, that a "defendant in a criminal case may appeal from the length, range or the manner of service of the sentence imposed by the sentencing court. The defendant may also appeal the imposition of consecutive sentences." Subsection (b) of that statute provides that

> [a]n appeal from a sentence may be on one (1) or more of the following grounds: (1) The sentence was not imposed in accordance with this chapter; (2) The sentence is excessive under the sentencing considerations set out in §§ 40-35-103 and 40-35-210; or (3) The sentence is inconsistent with the purposes of sentencing set out in §§ 40-35-102 and 40-35-103.

Defendant Wiggins first argues that the record fails to establish that the trial court considered the presentence report. Tennessee Code Annotated section 40-35-210(b) provides:

> (b) To determine the specific sentence and the appropriate combination of sentencing alternatives that shall be imposed on the defendant, the court shall consider the following:
>
> (1) The evidence, if any, received at the trial and the sentencing hearing;
>
> (2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

This court does not agree with the Defendant's assertion that the record fails to establish that the trial court considered the presentence report. In its findings, the trial court stated, "Mr.Wiggins has many, many more criminal convictions than is necessary to establish the appropriate range." The court also found that "the defendant before trial or sentencing has failed to comply with the conditions of a sentence involving release into the community. Indeed, the record does indicate Mr. Wiggins has had his probation revoked in this manner." The presentence report shows that the Defendant had six prior theft convictions, four bad check convictions, two forgery convictions, ten driving on a revoked license convictions, a failure to appear conviction, and a malicious mischief conviction. The report also shows the Defendant had his probation revoked in at least three previous cases, the latest revocation occurring on February 24, 2010. The trial court's knowledge concerning these matters could have come only from reading the presentence report.

The Defendant next argues the trial court failed to follow the sentencing laws because it gave his written allocution little weight. The trial court noted that it "place[d] much less weight on that statement than it would had it been under oath and subject to cross examination." The record clearly shows that the trial court did consider the allocution. In accordance with *Carter, supra,* where the trial court considered all of the criteria set out in Tennessee Code Annotated section 40-35-210(b); imposed a sentence within the applicable range; set forth its reasons for imposing the sentence that it did; and the relevant findings are adequately supported by the record, the appellate court may not modify the sentence even if it would have preferred a different result. *Carter*, 254 S.W.3d at 346 (citing *State v. Pike*, 978 S.W.2d 904 app. at 926-27 (Tenn. 1998)).

Finally, the Defendant argues that the trial court misconstrued correspondence from Colleen McAllister of Correctional Alternatives, Inc. The correspondence is an unsigned e-mail attached to a Sentencing Memorandum prepared for the Defendant. It begins, "We can take Mr. Wiggins under a Community Corrections Sentence." The trial court acknowledged the correspondence and stated "[s]he indicate[d] he could be a candidate for that." The trial court further stated that it considered that as a factor in its sentencing decision. The Defendant asserts the court's statement that the Defendant "could be a candidate" contradicts the fact that he was accepted into the program if the court so ordered. In our view, the statement is more of an imprecise choice of words than a misunderstanding of the contents of the e-mail. Moreover, it is clear from the record that the trial court considered a community corrections sentence.

Thus, we find that the trial court considered all the factors set out in Tennessee Code Annotated section 40-35-210(b) and that its sentencing determination is entitled to a presumption of correctness. The trial court found as aggravating factors that Mr. Wiggins had a previous history of criminal convictions in addition to that necessary to establish the appropriate range, Tenn. Code Ann. § 40-35-114(1); that he had previously failed to comply with the conditions of a sentence involving release into the community, Tenn. Code Ann. § 40-35-114(8); and, with regard to the evading arrest conviction, had no hesitation about committing a crime when the risk to human life was high. Tenn. Code Ann. § 40-35-114(10). The trial court sentenced the Defendant to a term within the appropriate range for each offense. With regard to the manner of service, the trial court found applicable as sentencing considerations that confinement was necessary to protect society by restraining a defendant who has a long history of criminal conduct and, with respect to the evading arrest conviction, was necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses. Tenn. Code Ann. § 40-35-103(1)(A) and (B). The trial court's findings are supported by the record and should be affirmed.

**Conclusion**

Based on the foregoing reasons, we affirm the trial court's judgments.

_____

DONALD P. HARRIS, SENIOR JUDGE

APPENDIX A

FRANKLIN PD: Franklin Police/Fire, Gamble.

MR. BESSANT: Yes, two black males leaving the Circuit City in Franklin, Tennessee, making threatening remarks, cause we pretty much know that they stole stuff from our store. They're in a gray Navigator, pulling up by Carraba's right now, they're heading towards Cool Springs Boulevard. I can't get a read on their license plate, but it's a Tennessee tag, with tinted windows.

FRANKLIN PD: Okay, are you gonna want to press charges on them?

MR. BESSANT: You know, I hadn't thought (inaudible). We would love to press charges if we can actually confirm that it's in the car, (laughter).

FRANKLIN PD: Okay, it's a gray Lincoln Navigator?

MR. BESSANT: Yeah, gray Lincoln Navigator, looks like it's 2006/2007. It's actually making a left onto Cool Springs Boulevard right now; I can still see it from here. Tinted windows, Tennessee tags. So they've actually been somebody who's suspected from stealing from Circuit City before, cause we had the same description of two males, after they left our store, they went to Hickory Hollow, and they were verified being at that location as well.

FRANKLIN PD: And your name, Sir?

MR. BESSANT: Matt, last name Bessant, B-E-S-S-A-N-T. Actually, they made a right onto Cool Springs Boulevard, heading toward Mack Hatcher. I just watched them change direction. So if there's a patrol unit near, we'd appreciate that. I can give you a physical description of the males as well, if you'd like.

FRANKLIN PD: Well, what did they supposedly steal?

MR. BESSANT: A alarm for a car; a car alarm.

FRANKLIN PD: An alarm?

MR. BESSANT: Uh-huh. Like, a remote start, keyless entry alarm.

FRANKLIN PD: Okay. And what remarks did they make that were threatening?

-12-

MR. BESSANT: They told (laughter) – well, racial slurs towards one of the managers; told them they'd step outside and they would settle this. So we just asked them to leave the store, because we knew what they'd done. We don't have the authority to – you know, to stop anybody (inaudible) to the different areas until the police get here; something the company doesn't do (inaudible).

FRANKLIN PD: Okay, hold on just a second.

MR. BESSANT: Thank you guys, you all have a nice day, see y'all.

FRANKLIN PD: Okay, what did the subjects look like?

MR. BESSANT: Both black males, mid-30's. A description of the first male would be roughly six foot two, 325 to 340. Second male: Six foot, 250 to 275. Both wearing loose, baggy clothing, jeans and t-shirts. One had on a Nike hat, the other wasn't wearing a hat.

FRANKLIN PD: Okay.

MR. BESSANT: Thank you, Sir; have a good day.

FRANKLIN PD: And what's the phone number you're calling from?

MR. BESSANT: My cell, which is 615 –

FRANKLIN PD: Un-huh.

MR. BESSANT: (gives telephone number).

FRANKLIN PD: Yes. I'll have an officer stop by and talk to you as soon as we're done locating them; okay?

MR. BESSANT: All right, thank you.

FRANKLIN PD: Thank you.