IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 19, 2020

## STATE OF TENNESSEE v. FALLON JENKINS MOORE

**Appeal from the Criminal Court for Sullivan County**
**No. S69-751  James F. Goodwin, Jr., Judge**

_____

## No. E2019-01270-CCA-R3-CD

_____

A Sullivan County General Session Court found the defendant, Fallon Jenkins Moore, guilty of driving under the influence in violation of Tennessee Code Annotated section 55-10-401. The defendant appealed the judgment to the Criminal Court for Sullivan County and filed a suppression motion, arguing the police did not have reasonable suspicion to justify her initial seizure. The trial court granted the defendant's motion, and the State appealed, asserting the defendant's seizure was supported by reasonable suspicion. Upon our review of the record, arguments of the parties, and pertinent authorities, we agree with the State and reverse the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed**

J. ROSS DYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and CAMILLE R. MCMULLEN, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Barry P. Staubus, District Attorney General; and Mitchell B. Watson, Assistant District Attorney General, for the appellant, State of Tennessee.

J. Matthew King, Kingsport, Tennessee, for the appellee, Fallon Jenkins Moore.

### OPINION

### *Facts and Procedural History*

On July 8, 2017, Officer Eric Keller arrested the defendant, Fallon Jenkins Moore, in Sullivan County for driving under the influence in violation of Tennessee Code Annotated section 55-10-401. As discussed in detail below, the arrest was precipitated by

a 9-1-1 telephone call made by a concerned citizen, Chris Flint. The defendant subsequently waived her right to indictment and a trial by jury and pleaded not guilty in the General Session Court of Sullivan County. On May 21, 2018, the general session court found the defendant guilty of the Class A misdemeanor offense of driving under the influence and imposed a sentence of eleven months and twenty-nine days in confinement to be suspended after forty-eight hours of service.

The defendant timely appealed to the Sullivan County Criminal Court and filed a motion to suppress the evidence obtained from her arrest. In the suppression motion, the defendant argued she was illegally seized by Officer Keller because "[t]he tip provided from dispatch to Officer Keller was a bare-bones, conclusory allegation of illegality" that "did not bear sufficient indicia of reliability for the officer to credit the caller's account of criminal activity, which is necessary to support a finding of reasonable suspicion to justify a traffic stop." The State opposed the suppression motion, and the trial court conducted an evidentiary hearing during which Whitley Hyatt and Officer Keller testified.

At approximately 2:35 a.m. on July 8, 2017, Whitley Hyatt, a communications dispatcher for the City of Bristol Police Department, fielded a 9-1-1 call from a concerned citizen, Chris Flint, regarding a possible drunk driver in Bristol, Tennessee. Ms. Hyatt documented the information obtained during the phone call in the Computer Aided Dispatch (CAD) system which generated an operations report. The report included information regarding the caller's name, location, and telephone number, information about the incident, and additional identifying information provided by the caller. The narrative of the call was detailed in the report, as follows:

> Male caller stated that two females were about to get in a vehicle and leave the bar, and they were extremely under the influence. Caller stated that he had attempted to call them an Uber but they thought he was trying to pick them up. Caller stated the vehicle was a gray or silver Ford or Hyundai that was parked near a motorcycle on the same side as State Line. He stated that it was occupied by two middle aged females whose speech was extremely slurred.

Regarding the location of the vehicle in question, Ms. Hyatt stated Mr. Flint was referring to State Line Bar and Grill located at 644 State Street, Bristol, Tennessee. As Ms. Hyatt fielded the call, her partner, Caitlin Fitzpatrick, dispatched the information to Officer Keller, the responding officer. As noted in the report, Ms. Hyatt received the call at 2:34:46 a.m., Officer Keller received the dispatch call at 2:35:53 a.m., and Officer Keller responded to the scene at 2:36:32 a.m. A copy of the CAD operations report was entered into evidence

along with a recording of the call and the related radio traffic and a corresponding transcript of the radio traffic.[1] Both recordings were played during the hearing.

During cross-examination, Ms. Hyatt acknowledged discrepancies between the information included in the CAD report and the information dispatched to Officer Keller. Specifically, Ms. Hyatt noted the report indicated two women were about to get into a vehicle and leave the bar while the dispatch recording indicated two women were inside the vehicle in question. Ms. Hyatt stated that while the report indicated the women were extremely drunk and had slurred speech, that information was not relayed to Officer Keller. Ms. Hyatt explained that after Ms. Fitzpatrick informed Officer Keller that there was a possible DUI driver, "[n]o additional information was relayed because [Officer Keller] checked on scene immediately." Ms. Hyatt also acknowledged the report did not designate the caller's location. Despite those discrepancies, Ms. Hyatt again highlighted the information that was relayed to Officer Keller based on the 9-1-1 call, including: that the vehicle at issue was a silver Ford or Hyundai, that two intoxicated, middle-aged females were likely in the vehicle, and that the vehicle was parked near a motorcycle close to State Line Bar and Grill.

Finally, Ms. Hyatt confirmed that Officer Keller did not know the caller's identity or hear the call firsthand. Rather, Officer Keller received the information obtained during the call from dispatch which is not permitted to provide a caller's personal information over the air. Ms. Hyatt noted that if requested, dispatch could provide a caller's information to a requesting officer in another form, like email, though she did not recall if Officer Keller requested the caller's information on July 8, 2017.

Officer Keller, a three-year veteran of the City of Bristol Police Department, testified that as he patrolled downtown Bristol on July 8, 2017, he received a dispatch call regarding "a possible DUI . . . in front of State Line Bar and Grill." As he travelled down State Street where the bar was located, Officer Keller encountered a man attempting to get his attention. Officer Keller made a U-turn and approached the man who identified himself as the caller and pointed towards a silver vehicle with its taillights on and parked in front of a motorcycle. At the time, Officer Keller did not know how many 9-1-1 calls had been placed regarding the possible DUI.

Officer Keller pulled near the vehicle and determined there were two people inside who "had long hair." Officer Keller believed the vehicle could have driven away at any moment based upon the illumination of the taillights though he was unable to determine if the engine was on at the time. He initiated both his forward and rear facing blue lights and

---

[1] Ms. Hyatt described "radio traffic" as the dispatcher's communications with the responding officer.

- 3 -

ran the license plate of the vehicle. Officer Keller explained that he initiated his blue lights because he believed there was "reasonable suspicion to further investigate" based upon the information provided by the dispatch call and the direction provided by the man who identified himself as the caller. After initiating his blue lights, Officer Keller approached the defendant's vehicle and spoke with her. At this point in the hearing, the defendant objected to further testimony regarding the stop of the defendant, noting the motion to suppress alleged the initial seizure was illegal as it was not based upon reasonable suspicion. The trial court sustained the defendant's objection.

The State continued with Officer Keller's testimony by introducing the video footage of the initial encounter with both Mr. Flint and the defendant into evidence.[2] Officer Keller described the footage as it played for the trial court, pointing out the man who directed him towards the defendant's vehicle, the location of State Line Bar and Grill, the defendant's vehicle with its taillights illuminated, and the motorcycle parked behind the defendant's vehicle.

During cross-examination, Officer Keller stated he did not know when the bars in the area closed but that he encountered the defendant at approximately 2:35 a.m. Regarding the dispatch call, Officer Keller agreed he did not hear the actual 9-1-1 call, and he did not know the source of the information. Rather, he received information from the dispatcher who advised that the possible DUI involved two women and a silver Ford or Hyundai parked "up the street from State Line." Officer Keller did not know if the vehicle was in motion when he received the dispatch call. He recognized it is possible for a vehicle's taillights to be illuminated without the engine being on and stated he did not know if the defendant's engine was on prior to initiating his blue lights.

Officer Keller explained that he was not provided any additional information to support that the women in the vehicle were intoxicated or why the 9-1-1 caller believed the same. Additionally, based upon the information provided by dispatch, Officer Keller admitted he did not know if the vehicle was located east or west on State Street. However, after initially driving westward, he noticed there were no vehicles in that direction, made a U-turn, and encountered the man who identified himself as the caller. Officer Keller agreed he had not located the vehicle prior to the man's flagging him down. Furthermore, Officer Keller did not know the man who identified himself as the caller. Officer Keller did not obtain the man's name or contact information and, at the time, had no way of confirming that the man was the caller. After the alleged caller pointed towards the defendant's car and identified it as being parked in front of a motorcycle, Officer Keller did not interact with him again. Officer Keller also noted he did not attempt to learn the caller's name

---

[2] The State also introduced a late-filed, redacted version of the video footage into evidence.

from dispatch, he did not ask the man to point out the vehicle, and he did not ask the man how he knew the occupants of the vehicle were intoxicated.

Within a matter of seconds, Officer Keller drove down State Street to the vehicle in question and activated his blue lights. Officer Keller noted the vehicle was legally parked and matched the description provided by both the alleged caller and dispatch. He did not initially observe any criminal activity and did nothing to verify the possible DUI prior to activating his blue lights. Instead, Officer Keller relied upon the information provided by dispatch and the alleged caller.

At the close of the proof, the trial court heard arguments from counsel and made the initial determination that the 9-1-1 caller was unknown for purposes of the motion to suppress.[3] The trial court then suspended the hearing in order to give the parties time in which to brief the court on whether the community caretaking exception to the warrant requirement applied to the facts of the defendant's case. At the continued hearing on May 2, 2019, the trial court did not hear additional proof but rather granted the defendant's suppression motion and dismissed the case. The trial court issued a written order specifying the same on June 17, 2019, ruling that "Officer Keller's seizure [of] the defendant violated the Fourth Amendment of the United States Constitution, and Article I, section 7 of the Tennessee Constitution, and any all evidence obtained therefrom is suppressed." The State subsequently filed this timely notice of appeal.

*Analysis*

On appeal, the State argues the trial court erred in granting the defendant's motion to suppress. The State asserts it proved Officer Keller seized the defendant based upon reasonable suspicion "that the defendant was violating or about to violate the law by driving under the influence." The State also argues the trial court "improperly classified the inciting tip as an anonymous tip." In contrast, the defendant asserts the trial court "correctly found the State's informant was anonymous and that there were inadequate indicia of his reliability." Ultimately, the defendant contends the trial court "did not commit error by holding Officer Keller's seizure of [the defendant] was based solely on conclusory allegations of criminal activity that were insufficient to support the reasonable suspicion exception to warrantless seizures." Upon our review, we agree with the State on both points.

Suppression issues on appeal are subject to a well-established standard of review. Appellate courts are bound by a trial court's findings of facts determined after a suppression hearing unless the evidence preponderates against them. *State v. Odom*, 928

---

[3] As noted in the record, the State was unable to locate Chris Flint for the suppression hearing.

S.W.2d 18, 23 (Tenn. 1996); *State v. Matthew T. McGee*, No. E2011-01756-CCA-R3-CD, 2012 WL 4017776, at *2 (Tenn. Crim. App. Sept. 13, 2012). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. Appellate courts should consider the entire record, affording the prevailing party "the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence." *McGee*, 2012 WL 4017776, at *2 (citing *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001)); *see also State v. Sanders*, 452 S.W.3d 300, 306 (Tenn. 2014). However, applying the law to the factual findings of the trial court is a question of law, which is reviewed *de novo* on appeal. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997); *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001).

The Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution guarantee freedom from unreasonable searches and seizures. These guarantees exist to "safeguard the privacy and security of individuals against arbitrary invasions of government officials." *Camara v. Municipal Court*, 387 U.S. 523, 528 (1967); *State v. Downey*, 945 S.W.2d 102, 106 (Tenn. 1997). A search and seizure conducted under a valid search warrant is presumptively reasonable, but a warrantless search is presumptively unreasonable and the evidence discovered is subject to suppression unless the State demonstrates the search or seizure was conducted pursuant to an exception to the warrant requirement. *State v. McCormick*, 494 S.W.3d 673, 678 (Tenn. 2016) (internal citations omitted). One such exception to the warrant requirement is an investigatory stop. *State v. Simpson*, 968 S.W.2d 776, 780 (Tenn. 1998). An investigatory stop must be based on reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. *Terry v. Ohio*, 392 U.S. 1, 20-21 (1968); *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). The State has the burden of demonstrating, by a preponderance of the evidence, that a warrantless search passed constitutional muster. *State v. Harris*, 280 S.W.3d 832, 839 (Tenn. Crim. App. 2008).

Generally, "[a] seizure occurs when, under the totality of the circumstances, a reasonable person would not have felt free to leave." *State v. Christian Philip Van Camp*, No. E2014-00667-CCA-R3-CD, 2014 WL 7399671, at *3 (Tenn. Crim. App. Dec. 29, 2014) (citing *State v. Hanning*, 296 S.W.3d 44, 49 (Tenn. 2009)). In the context of this appeal, "when an officer activates his blue lights, the officer has initiated a seizure which must be justified by either probable cause or reasonable suspicion." *Id.* (citation omitted). Courts review the legality of a reasonable suspicion stop by looking at the totality of the circumstances from the perspective of a reasonable officer. *State v. Smith*, 484 S.W.3d 393, 402 (Tenn. 2016) (citing *Day*, 263 S.W.3d at 903)). This requires a review of the record for "specific and articulable facts" demonstrating that the defendant engaged in criminal activity, or was about to engage in criminal activity. *Id.*; *see Terry*, 392 U.S. at 20-21; *Binette*, 33 S.W.3d at 218. The subjective state of mind of the officer is not relevant

to analyzing a reasonable suspicion stop. *Id.* (citing *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006)). Instead, "this Court must consider the totality of the circumstances, including the objective observations of the police officer, information obtained from other officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders." *Christian Philip Van Camp*, 2014 WL 7399671, at *3 (citation omitted). These considerations indicate that "[r]easonable suspicion is dependent upon both the content of information possessed by police and its degree of reliability." *Id.* (citation and internal quotation omitted). "[I]f the defendant attempts to suppress evidence collected during the challenged stop, the state is not limited in its opposing argument to the grounds ostensibly relied upon by the officer if the proof supports the stop on other grounds." *Smith*, 484 S.W.3d at 402 (citing *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004)).

An investigatory stop supported by reasonable suspicion "may be based upon information received by police officers from citizen complainants, whether known or anonymous." *Christian Philip Van Camp*, 2014 WL 7399671, at *4. If information is received from an anonymous informant, the information "must include a showing of both the basis of the informant's knowledge and the informant's credibility in order to be considered reliable." *Id.* (citing *Hanning*, 296 S.W.3d at 49). If information is received from a known citizen informant, the information "'is presumed reliable,' especially 'where circumstances indicate the information was gained from first-hand experience, and the motivation for communicating with law enforcement authorities is based on the interest of society or personal safety.'" *Id.* (quoting *State v. Day*, 263 S.W.3d 891, 904 (Tenn. 2008)). "While the credibility of an anonymous informant intrinsically cannot be verified, . . . in cases involving named citizen informants, the officer has the ability to contact the citizen informant in the event of a false report." *State v. Luke*, 995 S.W.2d 630, 637 (Tenn. Crim. App. 1998) (citation omitted). However, "[t]he name of the citizen alone is not sufficient to qualify the informant as a known citizen informant, thereby raising the presumption of reliability." *Id.* (citation omitted). In order "[f]or reliability to be presumed, information about the citizen's status or his or her relationship to the events or persons involved must be present." *Id.* (citations omitted).

In addition to the source of the information, "[t]he content of the tip is also a crucial factor and, in particular, the level of danger that the tip reveals." *State v. Pulley*, 863 S.W.2d 29, 32 (Tenn. 1993). This Court must weigh "'the gravity of the public concern, the degree to which the seizure advances that concern, and the severity of the intrusion into individual privacy.'" *Christian Philip Van Camp*, 2014 WL 7399671, at *4 (quoting *Pulley*, 863 S.W.2d at 30). For example, "[a]n investigatory stop may be initiated on the basis of a report of reckless driving, 'even without corroboration of any criminal activity by law enforcement officials,' due to the 'sufficiently high risk of imminent injury or death to members of the public.'" *Id.* (quoting *Hanning*, 296 S.W.3d at 52, 54 ("distinguishing

an anonymous report of reckless driving from the anonymous report of a concealed weapon in *Florida v. J.L.*, 529 U.S. 266 (2000)"); *see also Navarette v. California*, 134 S. Ct. 1683, 1690 (2014) ("finding that an anonymous tip was adequately reliable under the circumstances 'to provide the officer with reasonable suspicion . . . to execute a traffic stop' for driving under the influence")).

It is important to note, "[t]he citizen complainant need not communicate directly with the officer conducting the investigatory stop." *Id.* Rather, "'[a]n officer may make an investigatory stop based upon a police dispatch as long as the individual or agency placing the dispatch has the requisite reasonable suspicion supported by specific and articulable facts that indicate criminal conduct.'" *Id.* (quoting *Luke*, 995 S.W.2d at 636). "Thus, the prosecution has the burden of establishing by a preponderance of the evidence that the police officer or agency responsible for the broadcast, bulletin or flyer had a reasonable suspicion, supported by specific and articulable facts, that a criminal offense had been, or was about to be, committed before the acts of the officer relying upon the information can be said to be legal." *State v. Moore*, 775 S.W.2d 372, 378 (Tenn. Crim. App. 1989).

Here, it is undisputed the defendant was seized at the moment Officer Keller initiated his blue lights. Thus, we must determine whether the warrantless seizure of the defendant was supported by reasonable suspicion. Regarding the tip which led to the defendant's seizure, the trial court ruled "that the information known to Officer Keller at the time he activated the blue lights on his cruiser did not bear sufficient indicia of reliability for him to credit the caller's account of ongoing criminal activity." We disagree.

The record indicates a concerned citizen, Chris Flint, called 9-1-1 to report a possible DUI involving two women near State Line Bar and Grill. The CAD report indicates Mr. Flint gave the dispatcher his name, his phone number, and a description of both the defendant and her vehicle. Mr. Flint also provided additional details establishing his relationship to the events in question, including, that the women had slurred speech and that he offered to provide an Uber for the women, which they declined and considered as an attempt to "pick them up." Within one minute of making the 9-1-1 call, Mr. Flint identified himself to Officer Keller and pointed in the direction of the defendant's vehicle. "When an informant reports an incident at or near the time of its occurrence, a court can often assume that the report is first-hand, and hence reliable." *Pulley*, 863 S.W.2d at 32. Accordingly, we conclude Mr. Flint was a known, citizen informant and the information he provided to police via the 9-1-1 dispatcher can be presumed reliable as the "circumstances indicate the information was gained from first-hand experience, and the motivation for communicating with law enforcement authorities is based on the interest of society or personal safety." *Christian Philip Van Camp*, 2014 WL 7399671, at *4 (quoting *Day*, 263 S.W.3d at 904); *Luke*, 995 S.W.2d at 636.

However, Mr. Flint's tip is still sufficient to support Officer Keller's reasonable suspicion even if analyzed as if it came from an anonymous citizen informant because Officer Keller corroborated the information provided by the tip. "The analysis of an anonymous tip involves consideration of the informant's basis of knowledge and reliability and of any corroborating circumstances known to the police." *Luke*, 995 S.W.2d at 637 (citing *Pulley*, 863 S.W.2d at 32). "Circumstances surrounding the informant's tip, such as contemporaneous police corroboration of the tip or corroboration of several details of the informant's report, may increase the reliability of the tip." *State v. Crepack*, No. E2017-02236-CCA-R3-CD, 2018 WL 4944957, at *7 (Tenn. Crim. App. Oct. 12, 2018) (citations omitted). As previously noted, Mr. Flint reported that two middle-aged women were intoxicated and getting into a silver Ford or Hyundai parked outside of State Line Bar and Grill. Dispatch provided this information to Officer Keller who located a vehicle matching the description less than one minute later. En route to the vehicle, a man flagged Officer Keller down, identified himself as the 9-1-1 caller, and pointed in the direction of the vehicle. Officer Keller then confirmed the description of the vehicle with dispatch and initiated his blue lights. The record indicates these events occurred in quick succession to one another as Mr. Flint called 9-1-1 at 2:34:46 a.m., the dispatch issued at 2:35:53 a.m., and Officer Keller located the vehicle at 2:36:32 a.m. As such, we conclude Officer Keller sufficiently corroborated the details provided by the caller's tip which aids in establishing the reliability of the tip. *Luke*, 995 S.W.2d at 638 ("The officer does not have to corroborate every detail of the anonymous informant's tip, but he or she must corroborate more than a few minor aspects, especially if they are not criminal in nature."). Thus, we conclude the information provided by the tip was reliable.

Having established the reliability of the tip, we must now address whether Officer Keller had reasonable suspicion to seize the defendant. "An officer may make an investigatory stop based upon a police dispatch as long as the individual or agency placing the dispatch has the requisite reasonable suspicion supported by specific and articulable facts that indicate criminal conduct." *Id.* at 636 (citations omitted). "The presence of reasonable suspicion may be assessed by looking to the testimony of the individual placing the dispatch or the testimony of the individuals who witnessed the information that is eventually passed on to the investigating officer." *Id.* (citation omitted).

As explained in detail above, Officer Keller received a dispatch call regarding a possible DUI in the area of State Line Bar and Grill. The dispatch call provided that a male caller indicated the possibility of a female DUI driver and provided a description of the vehicle and the location of the vehicle, including that a motorcycle was parked behind it. Within one minute of receiving the information, Officer Keller located the potential vehicle. In doing so, he also interacted with a man in the area of State Line Bar and Grill who flagged him down, indicated he was the 9-1-1 caller, and pointed in the direction of

the defendant's vehicle. Within seconds, Officer Keller located a silver vehicle occupied by two individuals with long hair. A motorcycle was parked behind the vehicle in question. Officer Keller confirmed his findings with dispatch which confirmed he located the vehicle in question as described by the 9-1-1 call. These interactions were captured on video and introduced at the hearing. Accordingly, the record shows that Officer Keller legally seized the defendant as the seizure was based upon specific and articulable facts indicating the defendant was about to commit the crime of driving under the influence.

Furthermore, the record demonstrates Officer Keller relied upon information provided to dispatch by a known citizen informant who acted out of concern for the safety of himself and the community at large. As such, "the potential for serious harm justified the stop" as "[t]he dangers inherent in driving on the public streets while under the influence of an intoxicant are obvious." *Luke*, 995 S.W.2d at 638 (citation omitted). Accordingly, reasonable suspicion existed to support Officer Keller's initial seizure of the defendant. The trial court erred in ruling otherwise.

Accordingly, we are of the opinion that the evidence contained in the record preponderates against the findings of the trial court that the stop of the defendant's vehicle violated the constitutional mandates of both the United States and Tennessee Constitutions. Based upon the totality of the circumstances described above, the State has satisfied its burden in establishing that there was an adequate, reasonable suspicion, supported by specific and articulable facts, that a criminal offense was about to be committed. The order of the trial court is reversed.

### *Conclusion*

After a thorough review of the record, we conclude that Officer Keller's investigatory stop was supported by reasonable suspicion and the trial court erred in granting the defendant's motion to suppress the evidence obtained as a result of her seizure. Therefore, the order of the trial court is reversed.

_____
J. ROSS DYER, JUDGE